U.S. Bank National Association, trustee,[1] *vs.* Antonio Ibanez (and a consolidated case[2,3]).

Suffolk. October 7, 2010. - January 7, 2011.

Present: Marshall, C.J., Ireland, Spina, Cordy, Botsford, & Gants, JJ.[4]

*Real Property,* Mortgage, Ownership, Record title. *Mortgage,* Real estate, Foreclosure, Assignment. *Notice,* Foreclosure of mortgage.

In two separate civil actions brought in the Land Court pursuant to G. L. c. 240, § 6, by the plaintiff banks, as trustees, seeking judgments declaring that they held clear title in fee simple to properties that they had foreclosed on (having claimed the authority to foreclose as the eventual assignees of the mortgages) and purchased back at foreclosure sales, the judge did not err in concluding that the securitization documents submitted by the plaintiffs failed to demonstrate that they were holders of the mortgages at the times of the publication of the notices of the foreclosure sales and of the sales themselves, and the judge therefore did not err in rendering judgments against the plaintiffs and in denying the plaintiffs' motions to vacate the judgments. [645-655] Cordy, J., concurring, with whom Botsford, J., joined.

Civil actions commenced in the Land Court Department on September 16 and October 30, 2008.

Motions for entry of default judgment and to vacate judgment were heard by *Keith C. Long,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*R. Bruce Allensworth (Phoebe S. Winder & Robert W. Sparkes, III,* with him) for U.S. Bank National Association & another.

*Paul R. Collier, III (Max W. Weinstein* with him) for Antonio Ibanez.

*Glenn F. Russell, Jr.,* for Mark A. LaRace & another.

[1] For the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-Z.

[2] Wells Fargo Bank, N.A., trustee, *vs.* Mark A. LaRace & another.

[3] The Appeals Court granted the plaintiffs' motion to consolidate these cases.

[4] Chief Justice Marshall participated in the deliberation on this case prior to her retirement.

The following submitted briefs for amici curiae:

*Martha Coakley,* Attorney General, *& John M. Stephan,* Assistant Attorney General, for the Commonwealth.

*Kevin Costello, Gary Klein, Shennan Kavanagh & Stuart Rossman* for National Consumer Law Center & others.

*Ward P. Graham & Robert J. Moriarty, Jr.,* for Real Estate Bar Association for Massachusetts, Inc.

*Marie McDonnell,* pro se.

GANTS, J. After foreclosing on two properties and purchasing the properties back at the foreclosure sales, U.S. Bank National Association (U.S. Bank), as trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-Z; and Wells Fargo Bank, N.A. (Wells Fargo), as trustee for ABFC 2005-OPT 1 Trust, ABFC Asset Backed Certificates, Series 2005-OPT 1 (plaintiffs), filed separate complaints in the Land Court asking a judge to declare that they held clear title to the properties in fee simple. We agree with the judge that the plaintiffs, who were not the original mortgagees, failed to make the required showing that they were the holders of the mortgages at the time of foreclosure. As a result, they did not demonstrate that the foreclosure sales were valid to convey title to the subject properties, and their requests for a declaration of clear title were properly denied.[5]

*Procedural history.* On July 5, 2007, U.S. Bank, as trustee, foreclosed on the mortgage of Antonio Ibanez, and purchased the Ibanez property at the foreclosure sale. On the same day, Wells Fargo, as trustee, foreclosed on the mortgage of Mark and Tammy LaRace, and purchased the LaRace property at that foreclosure sale.

In September and October of 2008, U.S. Bank and Wells Fargo brought separate actions in the Land Court under G. L. c. 240, § 6, which authorizes actions "to quiet or establish the title to land situated in the commonwealth or to remove a cloud from the title thereto." The two complaints sought identical relief: (1) a judgment that the right, title, and interest of the mortgagor (Ibanez or the LaRaces) in the property was extin-

---

[5]We acknowledge the amicus briefs filed by the Attorney General; the Real Estate Bar Association for Massachusetts, Inc.; Marie McDonnell; and the National Consumer Law Center, together with Darlene Manson, Germano DePina, Robert Lane, Ann Coiley, Roberto Szumik, and Geraldo Dosanjos.

guished by the foreclosure; (2) a declaration that there was no cloud on title arising from publication of the notice of sale in the Boston Globe; and (3) a declaration that title was vested in the plaintiff trustee in fee simple. U.S. Bank and Wells Fargo each asserted in its complaint that it had become the holder of the respective mortgage through an assignment made *after* the foreclosure sale.

In both cases, the mortgagors — Ibanez and the LaRaces — did not initially answer the complaints, and the plaintiffs moved for entry of default judgment. In their motions for entry of default judgment, the plaintiffs addressed two issues: (1) whether the Boston Globe, in which the required notices of the foreclosure sales were published, is a newspaper of "general circulation" in Springfield, the town where the foreclosed properties lay. See G. L. c. 244, § 14 (requiring publication every week for three weeks in newspaper published in town where foreclosed property lies, or of general circulation in that town); and (2) whether the plaintiffs were legally entitled to foreclose on the properties where the assignments of the mortgages to the plaintiffs were neither executed nor recorded in the registry of deeds until after the foreclosure sales.[6] The two cases were heard together by the Land Court, along with a third case that raised the same issues.

On March 26, 2009, judgment was entered against the plaintiffs. The judge ruled that the foreclosure sales were invalid because, in violation of G. L. c. 244, § 14, the notices of the foreclosure sales named U.S. Bank (in the Ibanez foreclosure) and Wells Fargo (in the LaRace foreclosure) as the mortgage holders where they had not yet been assigned the mortgages.[7] The judge found, based on each plaintiff's assertions in its complaint, that the plaintiffs acquired the mortgages by assignment only after the foreclosure sales and thus had no interest in the mortgages being foreclosed at the time of the publication of the notices of sale or at the time of the foreclosure sales.[8]

---

[6]The uncertainty surrounding the first issue was the reason the plaintiffs sought a declaration of clear title in order to obtain title insurance for these properties. The second issue was raised by the judge in the LaRace case at a January 5, 2009, case management conference.

[7]The judge also concluded that the Boston Globe was a newspaper of general circulation in Springfield, so the foreclosures were not rendered invalid on that ground because notice was published in that newspaper.

[8]In the third case, LaSalle Bank National Association, trustee for the

The plaintiffs then moved to vacate the judgments. At a hearing on the motions on April 17, 2009, the plaintiffs conceded that each complaint alleged a postnotice, postforeclosure sale assignment of the mortgage at issue, but they now represented to the judge that documents might exist that could show a prenotice, preforeclosure sale assignment of the mortgages. The judge granted the plaintiffs leave to produce such documents, provided they were produced in the form they existed in at the time the foreclosure sale was noticed and conducted. In response, the plaintiffs submitted hundreds of pages of documents to the judge, which they claimed established that the mortgages had been assigned to them before the foreclosures. Many of these documents related to the creation of the securitized mortgage pools in which the Ibanez and LaRace mortgages were purportedly included.[9]

The judge denied the plaintiffs' motions to vacate judgment on October 14, 2009, concluding that the newly submitted documents did not alter the conclusion that the plaintiffs were not the holders of the respective mortgages at the time of foreclosure. We granted the parties' applications for direct appellate review.

*Factual background.* We discuss each mortgage separately, describing when appropriate what the plaintiffs allege to have happened and what the documents in the record demonstrate.[10]

*The Ibanez mortgage.* On December 1, 2005, Antonio Ibanez took out a $103,500 loan for the purchase of property at 20 Crosby Street in Springfield, secured by a mortgage to the lender, Rose Mortgage, Inc. (Rose Mortgage). The mortgage was recorded the following day. Several days later, Rose Mortgage

certificate holders of Bear Stearns Asset Backed Securities I, LLC Asset-Backed Certificates, Series 2007-HE2 *vs.* Freddy Rosario, the judge concluded that the mortgage foreclosure "was not rendered invalid by its failure to record the assignment reflecting its status as holder of the mortgage prior to the foreclosure since it was, in fact, the holder by assignment at the time of the foreclosure, it truthfully claimed that status in the notice, and it could have produced proof of that status (the unrecorded assignment) if asked."

[9]On June 1, 2009, attorneys for the defendant mortgagors filed their appearance in the cases for the first time.

[10]The LaRace defendants allege that the documents submitted to the judge following the plaintiffs' motions to vacate judgment are not properly in the record before us. They also allege that several of these documents are not properly authenticated. Because we affirm the judgment on other grounds, we do not address these concerns, and assume that these documents are properly before us and were adequately authenticated.

executed an assignment of this mortgage in blank, that is, an assignment that did not specify the name of the assignee.[11] The blank space in the assignment was at some point stamped with the name of Option One Mortgage Corporation (Option One) as the assignee, and that assignment was recorded on June 7, 2006. Before the recording, on January 23, 2006, Option One executed an assignment of the Ibanez mortgage in blank.

According to U.S. Bank, Option One assigned the Ibanez mortgage to Lehman Brothers Bank, FSB, which assigned it to Lehman Brothers Holdings Inc., which then assigned it to the Structured Asset Securities Corporation,[12] which then assigned the mortgage, pooled with approximately 1,220 other mortgage loans, to U.S. Bank, as trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-Z. With this last assignment, the Ibanez and other loans were pooled into a trust and converted into mortgage-backed securities that can be bought and sold by investors — a process known as securitization.

For ease of reference, the chain of entities through which the Ibanez mortgage allegedly passed before the foreclosure sale is:

Rose Mortgage, Inc. (originator)
⇓
Option One Mortgage Corporation (record holder)
⇓
Lehman Brothers Bank, FSB
⇓
Lehman Brothers Holdings Inc. (seller)
⇓
Structured Asset Securities Corporation (depositor)
⇓
U.S. Bank National Association, as trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-Z

---

[11]This signed and notarized document states: "FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to ＿＿＿＿＿ all beneficial interest under that certain Mortgage dated December 1, 2005 executed by Antonio Ibanez . . . ."

[12]The Structured Asset Securities Corporation is a wholly owned direct subsidiary of Lehman Commercial Paper Inc., which is in turn a wholly owned, direct subsidiary of Lehman Brothers Holdings Inc.

According to U.S. Bank, the assignment of the Ibanez mortgage to U.S. Bank occurred pursuant to a December 1, 2006, trust agreement, which is not in the record. What is in the record is the private placement memorandum (PPM), dated December 26, 2006, a 273-page, unsigned offer of mortgage-backed securities to potential investors. The PPM describes the mortgage pools and the entities involved, and summarizes the provisions of the trust agreement, including the representation that mortgages "will be" assigned into the trust. According to the PPM, "[e]ach transfer of a Mortgage Loan from the Seller [Lehman Brothers Holdings Inc.] to the Depositor [Structured Asset Securities Corporation] and from the Depositor to the Trustee [U.S. Bank] will be intended to be a sale of that Mortgage Loan and will be reflected as such in the Sale and Assignment Agreement and the Trust Agreement, respectively." The PPM also specifies that "[e]ach Mortgage Loan will be identified in a schedule appearing as an exhibit to the Trust Agreement." However, U.S. Bank did not provide the judge with any mortgage schedule identifying the Ibanez loan as among the mortgages that were assigned in the trust agreement.

On April 17, 2007, U.S. Bank filed a complaint to foreclose on the Ibanez mortgage in the Land Court under the Servicemembers Civil Relief Act (Servicemembers Act), which restricts foreclosures against active duty members of the uniformed services. See 50 U.S.C. Appendix §§ 501, 511, 533 (2006 & Supp. II 2008).[13] In the complaint, U.S. Bank represented that it was the "owner (or assignee) and holder" of the mortgage given by Ibanez for the property. A judgment issued on behalf of U.S. Bank on June 26, 2007, declaring that the mortgagor was not entitled to protection from foreclosure under the Servicemembers Act. In June, 2007, U.S. Bank also caused to be published in the Boston Globe the notice of the foreclosure sale required by G. L. c. 244, § 14. The notice identified U.S. Bank as the "present holder" of the mortgage.

At the foreclosure sale on July 5, 2007, the Ibanez property

---

[13]As implemented in Massachusetts, a mortgage holder is required to go to court to obtain a judgment declaring that the mortgagor is not a beneficiary of the Servicemembers Act before proceeding to foreclosure. St. 1943, c. 57, as amended through St. 1998, c. 142.

was purchased by U.S. Bank, as trustee for the securitization trust, for $94,350, a value significantly less than the outstanding debt and the estimated market value of the property. The foreclosure deed (from U.S. Bank, trustee, as the purported holder of the mortgage, to U.S. Bank, trustee, as the purchaser) and the statutory foreclosure affidavit were recorded on May 23, 2008. On September 2, 2008, more than one year after the sale, and more than five months after recording of the sale, American Home Mortgage Servicing, Inc., "as successor-in-interest" to Option One, which was until then the record holder of the Ibanez mortgage, executed a written assignment of that mortgage to U.S. Bank, as trustee for the securitization trust.[14] This assignment was recorded on September 11, 2008.

*The LaRace mortgage.* On May 19, 2005, Mark and Tammy LaRace gave a mortgage for the property at 6 Brookburn Street in Springfield to Option One as security for a $103,200 loan; the mortgage was recorded that same day. On May 26, 2005, Option One executed an assignment of this mortgage in blank.

According to Wells Fargo, Option One later assigned the LaRace mortgage to Bank of America in a July 28, 2005, flow sale and servicing agreement. Bank of America then assigned it to Asset Backed Funding Corporation (ABFC) in an October 1, 2005, mortgage loan purchase agreement. Finally, ABFC pooled the mortgage with others and assigned it to Wells Fargo, as trustee for the ABFC 2005-OPT 1 Trust, ABFC Asset-Backed Certificates, Series 2005-OPT 1, pursuant to a pooling and servicing agreement (PSA).

For ease of reference, the chain of entities through which the LaRace mortgage allegedly passed before the foreclosure sale is:

Option One Mortgage Corporation
(originator and record holder)
⇓
Bank of America
⇓

---

[14]The Land Court judge questioned whether American Home Mortgage Servicing, Inc., was in fact a successor in interest to Option One. Given our affirmance of the judgment on other grounds, we need not address this question.

Asset Backed Funding Corporation (depositor)
⇓
Wells Fargo, as trustee for the ABFC 2005-OPT 1, ABFC Asset-Backed Certificates, Series 2005-OPT 1

Wells Fargo did not provide the judge with a copy of the flow sale and servicing agreement, so there is no document in the record reflecting an assignment of the LaRace mortgage by Option One to Bank of America. The plaintiff did produce an unexecuted copy of the mortgage loan purchase agreement, which was an exhibit to the PSA. The mortgage loan purchase agreement provides that Bank of America, as seller, "does hereby agree to and does hereby sell, assign, set over, and otherwise convey to the Purchaser [ABFC], without recourse, on the Closing Date . . . all of its right, title and interest in and to each Mortgage Loan." The agreement makes reference to a schedule listing the assigned mortgage loans, but this schedule is not in the record, so there was no document before the judge showing that the LaRace mortgage was among the mortgage loans assigned to the ABFC.

Wells Fargo did provide the judge with a copy of the PSA, which is an agreement between the ABFC (as depositor), Option One (as servicer), and Wells Fargo (as trustee), but this copy was downloaded from the Securities and Exchange Commission Web site and was not signed. The PSA provides that the depositor "does hereby transfer, assign, set over and otherwise convey to the Trustee, on behalf of the Trust . . . all the right, title and interest of the Depositor . . . in and to . . . each Mortgage Loan identified on the Mortgage Loan Schedules," and "does hereby deliver" to the trustee the original mortgage note, an original mortgage assignment "in form and substance acceptable for recording," and other documents pertaining to each mortgage.

The copy of the PSA provided to the judge did not contain the loan schedules referenced in the agreement. Instead, Wells Fargo submitted a schedule that it represented identified the loans assigned in the PSA, which did not include property addresses, names of mortgagors, or any number that corresponds to the loan number or servicing number on the LaRace mortgage. Wells Fargo contends that a loan with the LaRace property's zip

code and city is the LaRace mortgage loan because the payment history and loan amount matches the LaRace loan.

On April 27, 2007, Wells Fargo filed a complaint under the Servicemembers Act in the Land Court to foreclose on the LaRace mortgage. The complaint represented Wells Fargo as the "owner (or assignee) and holder" of the mortgage given by the LaRaces for the property. A judgment issued on behalf of Wells Fargo on July 3, 2007, indicating that the LaRaces were not beneficiaries of the Servicemembers Act and that foreclosure could proceed in accordance with the terms of the power of sale. In June, 2007, Wells Fargo caused to be published in the Boston Globe the statutory notice of sale, identifying itself as the "present holder" of the mortgage.

At the foreclosure sale on July 5, 2007, Wells Fargo, as trustee, purchased the LaRace property for $120,397.03, a value significantly below its estimated market value. Wells Fargo did not execute a statutory foreclosure affidavit or foreclosure deed until May 7, 2008. That same day, Option One, which was still the record holder of the LaRace mortgage, executed an assignment of the mortgage to Wells Fargo as trustee; the assignment was recorded on May 12, 2008. Although executed ten months after the foreclosure sale, the assignment declared an effective date of April 18, 2007, a date that preceded the publication of the notice of sale and the foreclosure sale.

*Discussion.* The plaintiffs brought actions under G. L. c. 240, § 6, seeking declarations that the defendant mortgagors' titles had been extinguished and that the plaintiffs were the fee simple owners of the foreclosed properties. As such, the plaintiffs bore the burden of establishing their entitlement to the relief sought. *Sheriff's Meadow Found., Inc.* v. *Bay-Courte Edgartown, Inc.*, 401 Mass. 267, 269 (1987). To meet this burden, they were required "not merely to demonstrate better title . . . than the defendants possess, but . . . to prove sufficient title to succeed in [the] action." *Id.* See *NationsBanc Mtge. Corp.* v. *Eisenhauer*, 49 Mass. App. Ct. 727, 730 (2000). There is no question that the relief the plaintiffs sought required them to establish the validity of the foreclosure sales on which their claim to clear title rested.

Massachusetts does not require a mortgage holder to obtain

judicial authorization to foreclose on a mortgaged property. See G. L. c. 183, § 21; G. L. c. 244, § 14. With the exception of the limited judicial procedure aimed at certifying that the mortgagor is not a beneficiary of the Servicemembers Act, a mortgage holder can foreclose on a property, as the plaintiffs did here, by exercise of the statutory power of sale, if such a power is granted by the mortgage itself. See *Beaton* v. *Land Court*, 367 Mass. 385, 390-391, 393, appeal dismissed, 423 U.S. 806 (1975).

Where a mortgage grants a mortgage holder the power of sale, as did both the Ibanez and LaRace mortgages, it includes by reference the power of sale set out in G. L. c. 183, § 21, and further regulated by G. L. c. 244, §§ 11-17C. Under G. L. c. 183, § 21, after a mortgagor defaults in the performance of the underlying note, the mortgage holder may sell the property at a public auction and convey the property to the purchaser in fee simple, "and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity." Even where there is a dispute as to whether the mortgagor was in default or whether the party claiming to be the mortgage holder is the true mortgage holder, the foreclosure goes forward unless the mortgagor files an action and obtains a court order enjoining the foreclosure.[15] See *Beaton* v. *Land Court, supra* at 393.

Recognizing the substantial power that the statutory scheme affords to a mortgage holder to foreclose without immediate judicial oversight, we adhere to the familiar rule that "one who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void." *Moore* v. *Dick*, 187 Mass. 207, 211 (1905). See *Roche* v. *Farnsworth*, 106 Mass. 509, 513 (1871) (power of

---

[15] An alternative to foreclosure through the right of statutory sale is foreclosure by entry, by which a mortgage holder who peaceably enters a property and remains for three years after recording a certificate or memorandum of entry forecloses the mortgagor's right of redemption. See G. L. c. 244, §§ 1, 2; *Joyner* v. *Lenox Sav. Bank*, 322 Mass. 46, 52-53 (1947). A foreclosure by entry may provide a separate ground for a claim of clear title apart from the foreclosure by execution of the power of sale. See, e.g., *Grabiel* v. *Michelson*, 297 Mass. 227, 228-229 (1937). Because the plaintiffs do not claim clear title based on foreclosure by entry, we do not discuss it further.

sale contained in mortgage "must be executed in strict compliance with its terms"). See also *McGreevey* v. *Charlestown Five Cents Sav. Bank*, 294 Mass. 480, 484 (1936).[16]

One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose. The "statutory power of sale" can be exercised by "the mortgagee or his executors, administrators, successors or assigns." G. L. c. 183, § 21. Under G. L. c. 244, § 14, "[t]he mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person" is empowered to exercise the statutory power of sale. Any effort to foreclose by a party lacking "jurisdiction and authority" to carry out a foreclosure under these statutes is void. *Chace* v. *Morse*, 189 Mass. 559, 561 (1905), citing *Moore* v. *Dick, supra*. See *Davenport* v. *HSBC Bank USA*, 275 Mich. App. 344, 347-348 (2007) (attempt to foreclose by party that had not yet been assigned mortgage results in "structural defect that goes to the very heart of defendant's ability to foreclose by advertisement," and renders foreclosure sale void).

A related statutory requirement that must be strictly adhered to in a foreclosure by power of sale is the notice requirement articulated in G. L. c. 244, § 14. That statute provides that "no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale," advance notice of the foreclosure sale has been provided to the mortgagor, to other interested parties, and by publication in a newspaper published in the town where the mortgaged land lies or of general circulation in that town. *Id.* "The manner in which the notice of the proposed sale shall be given is one of the important terms of the power, and a

---

[16]We recognize that a mortgage holder must not only act in strict compliance with its power of sale but must also "act in good faith and . . . use reasonable diligence to protect the interests of the mortgagor," and this responsibility is "more exacting" where the mortgage holder becomes the buyer at the foreclosure sale, as occurred here. See *Williams* v. *Resolution GGF Oy*, 417 Mass. 377, 382-383 (1994), quoting *Seppala & Aho Constr. Co.* v. *Petersen*, 373 Mass. 316, 320 (1977). Because the issue was not raised by the defendant mortgagors or the judge, we do not consider whether the plaintiffs committed a breach of this obligation.

strict compliance with it is essential to the valid exercise of the power." *Moore* v. *Dick, supra* at 212. See *Chace* v. *Morse, supra* ("where a certain notice is prescribed, a sale without any notice, or upon a notice lacking the essential requirements of the written power, would be void as a proceeding for foreclosure"). See also *McGreevey* v. *Charlestown Five Cents Sav. Bank, supra.* Because only a present holder of the mortgage is authorized to foreclose on the mortgaged property, and because the mortgagor is entitled to know who is foreclosing and selling the property, the failure to identify the holder of the mortgage in the notice of sale may render the notice defective and the foreclosure sale void.[17] See *Roche* v. *Farnsworth, supra* (mortgage sale void where notice of sale identified original mortgagee but not mortgage holder at time of notice and sale). See also *Bottomly* v. *Kabachnick,* 13 Mass. App. Ct. 480, 483-484 (1982) (foreclosure void where holder of mortgage not identified in notice of sale).

For the plaintiffs to obtain the judicial declaration of clear title that they seek, they had to prove their authority to foreclose under the power of sale and show their compliance with the requirements on which this authority rests. Here, the plaintiffs were not the original mortgagees to whom the power of sale was granted; rather, they claimed the authority to foreclose as the eventual assignees of the original mortgagees. Under the plain language of G. L. c. 183, § 21, and G. L. c. 244, § 14, the plaintiffs had the authority to exercise the power of sale contained in the Ibanez and LaRace mortgages only if they were the assignees of the mortgages at the time of the notice of sale and the subsequent foreclosure sale. See *In re Schwartz,* 366 B.R. 265, 269 (Bankr. D. Mass. 2007) ("Acquiring the mortgage after the entry and foreclosure sale does not satisfy the Massachusetts statute").[18] See also *Jeff-Ray Corp.* v. *Jacobson,* 566 So. 2d 885, 886 (Fla. Dist. Ct. App. 1990) (per curiam) (foreclosure

---

[17]The form of foreclosure notice provided in G. L. c. 244, § 14, calls for the present holder of the mortgage to identify itself and sign the notice. While the statute permits other forms to be used and allows the statutory form to be "altered as circumstances require," G. L. c. 244, § 14, we do not interpret this flexibility to suggest that the present holder of the mortgage need not identify itself in the notice.

[18]The plaintiffs were not authorized to foreclose by virtue of any of the

action could not be based on assignment of mortgage dated four months after commencement of foreclosure proceeding).

The plaintiffs claim that the securitization documents they submitted establish valid assignments that made them the holders of the Ibanez and LaRace mortgages before the notice of sale and the foreclosure sale. We turn, then, to the documentation submitted by the plaintiffs to determine whether it met the requirements of a valid assignment.

Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor. See G. L. c. 183, § 3; *Saint Patrick's Religious, Educ. & Charitable Ass'n* v. *Hale*, 227 Mass. 175, 177 (1917). In a "title theory state" like Massachusetts, a mortgage is a transfer of legal title in a property to secure a debt. See *Faneuil Investors Group, Ltd. Partnership* v. *Selectmen of Dennis*, 458 Mass. 1, 6 (2010). Therefore, when a person borrows money to purchase a home and gives the lender a mortgage, the homeowner-mortgagor retains only equitable title in the home; the legal title is held by the mortgagee. See *Vee Jay Realty Trust Co.* v. *Di-Croce*, 360 Mass. 751, 753 (1972), quoting *Dolliver* v. *St. Joseph Fire & Marine Ins. Co.*, 128 Mass. 315, 316 (1880) (although "as to all the world except the mortgagee, a mortgagor is the owner of the mortgaged lands," mortgagee has legal title to property); *Maglione* v. *BancBoston Mtge. Corp.*, 29 Mass. App. Ct. 88, 90 (1990). Where, as here, mortgage loans are pooled together in a trust and converted into mortgage-backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home or farm and must be treated as such.

Focusing first on the Ibanez mortgage, U.S. Bank argues that it was assigned the mortgage under the trust agreement described in the PPM, but it did not submit a copy of this trust agreement to the judge. The PPM, however, described the trust agreement as an agreement to be executed in the future, so it only furnished evidence of an intent to assign mortgages to U.S. Bank, not

---

other provisions of G. L. c. 244, § 14: they were not the guardian or conservator, or acting in the name of, a person so authorized; nor were they the attorney duly authorized by a writing under seal.

proof of their actual assignment. Even if there were an executed trust agreement with language of present assignment, U.S. Bank did not produce the schedule of loans and mortgages that was an exhibit to that agreement, so it failed to show that the Ibanez mortgage was among the mortgages to be assigned by that agreement. Finally, even if there were an executed trust agreement with the required schedule, U.S. Bank failed to furnish any evidence that the entity assigning the mortgage — Structured Asset Securities Corporation — ever held the mortgage to be assigned. The last assignment of the mortgage on record was from Rose Mortgage to Option One; nothing was submitted to the judge indicating that Option One ever assigned the mortgage to anyone before the foreclosure sale.[19] Thus, based on the documents submitted to the judge, Option One, not U.S. Bank, was the mortgage holder at the time of the foreclosure, and U.S. Bank did not have the authority to foreclose the mortgage.

Turning to the LaRace mortgage, Wells Fargo claims that, before it issued the foreclosure notice, it was assigned the LaRace mortgage under the PSA. The PSA, in contrast with U.S. Bank's PPM, uses the language of a present assignment ("does hereby . . . assign" and "does hereby deliver") rather than an intent to assign in the future. But the mortgage loan schedule Wells Fargo submitted failed to identify with adequate specificity the LaRace mortgage as one of the mortgages assigned in the PSA. Moreover, Wells Fargo provided the judge with no document that reflected that the ABFC (depositor) held the LaRace mortgage that it was purportedly assigning in the PSA. As with the Ibanez loan, the record holder of the LaRace loan was Option One, and nothing was submitted to the judge which demonstrated that the LaRace loan was ever assigned by Option One to another entity before the publication of the notice and the sale.

Where a plaintiff files a complaint asking for a declaration of clear title after a mortgage foreclosure, a judge is entitled to ask for proof that the foreclosing entity was the mortgage holder at

---

[19]Ibanez challenges the validity of this assignment to Option One. Because of the failure of U.S. Bank to document any preforeclosure sale assignment or chain of assignments by which it obtained the Ibanez mortgage from Option One, it is unnecessary to address the validity of the assignment from Rose Mortgage to Option One.

the time of the notice of sale and foreclosure, or was one of the parties authorized to foreclose under G. L. c. 183, § 21, and G. L. c. 244, § 14. A plaintiff that cannot make this modest showing cannot justly proclaim that it was unfairly denied a declaration of clear title. See *In re Schwartz, supra* at 266 ("When HomEq [Servicing Corporation] was required to prove its authority to conduct the sale, and despite having been given ample opportunity to do so, what it produced instead was a jumble of documents and conclusory statements, some of which are not supported by the documents and indeed even contradicted by them"). See also *Bayview Loan Servicing, LLC* v. *Nelson*, 382 Ill. App. 3d 1184, 1188 (2008) (reversing grant of summary judgment in favor of financial entity in foreclosure action, where there was "no evidence that [the entity] ever obtained any legal interest in the subject property").

We do not suggest that an assignment must be in recordable form at the time of the notice of sale or the subsequent foreclosure sale, although recording is likely the better practice. Where a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder. However, there must be proof that the assignment was made by a party that itself held the mortgage. See *In re Samuels*, 415 B.R. 8, 20 (Bankr. D. Mass. 2009). A foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage. See *In re Parrish*, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005) ("If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant"). The key in either case is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale (or the foreclosing entity must be one of the parties authorized to foreclose under G. L. c. 183, § 21, and G. L. c. 244, § 14).

The judge did not err in concluding that the securitization documents submitted by the plaintiffs failed to demonstrate that they were the holders of the Ibanez and LaRace mortgages, respectively, at the time of the publication of the notices and the sales. The judge, therefore, did not err in rendering judgments against the plaintiffs and in denying the plaintiffs' motions to vacate the judgments.[20]

We now turn briefly to three other arguments raised by the plaintiffs on appeal. First, the plaintiffs initially contended that the assignments in blank executed by Option One, identifying the assignor but not the assignee, not only "evidence[] and confirm[] the assignments that occurred by virtue of the securitization agreements," but "are effective assignments in their own right." But in their reply briefs they conceded that the assignments in blank did not constitute a lawful assignment of the mortgages. Their concession is appropriate. We have long held that a conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void; we do not regard an assignment of land in blank as giving legal title in land to the bearer of the assignment. See *Flavin* v. *Morrissey*, 327 Mass. 217, 219 (1951); *Macurda* v. *Fuller*, 225 Mass. 341, 344 (1916). See also G. L. c. 183, § 3.

Second, the plaintiffs contend that, because they held the mortgage note, they had a sufficient financial interest in the mortgage to allow them to foreclose. In Massachusetts, where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage. *Barnes* v. *Boardman*, 149 Mass. 106, 114 (1889). Rather, the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment. *Id.* ("In some jurisdictions it is held that the mere transfer of the debt, without any assignment or even mention of the mortgage, carries the mortgage with it, so as to enable the assignee to assert his title in an action at law. . . .

---

[20]The plaintiffs have not pressed the procedural question whether the judge exceeded his authority in rendering judgment against them on their motions for default judgment, and we do not address it here.

This doctrine has not prevailed in Massachusetts, and the tendency of the decisions here has been, that in such cases the mortgagee would hold the legal title in trust for the purchaser of the debt, and that the latter might obtain a conveyance by a bill in equity"). See *Young* v. *Miller*, 6 Gray 152, 154 (1856). In the absence of a valid written assignment of a mortgage or a court order of assignment, the mortgage holder remains unchanged. This common-law principle was later incorporated in the statute enacted in 1912 establishing the statutory power of sale, which grants such a power to "the mortgagee or his executors, administrators, successors or assigns," but not to a party that is the equitable beneficiary of a mortgage held by another. G. L. c. 183, § 21, inserted by St. 1912, c. 502, § 6.

Third, the plaintiffs initially argued that postsale assignments were sufficient to establish their authority to foreclose, and now argue that these assignments are sufficient when taken in conjunction with the evidence of a presale assignment. They argue that the use of postsale assignments was customary in the industry, and point to Title Standard No. 58 (3) issued by the Real Estate Bar Association for Massachusetts, which declares: "A title is not defective by reason of . . . [t]he recording of an Assignment of Mortgage executed either prior, or subsequent, to foreclosure where said Mortgage has been foreclosed, of record, by the Assignee."[21] To the extent that the plaintiffs rely on this title standard for the proposition that an entity that does not hold a mortgage may foreclose on a property, and then cure the cloud on title by a later assignment of a mortgage, their reliance is misplaced, because this proposition is contrary to G. L. c. 183, § 21, and G. L. c. 244, § 14. If the plaintiffs did not have their assignments to the Ibanez and LaRace mortgages at the time of the publication of the notices and the sales, they lacked authority to foreclose under G. L. c. 183, § 21, and G. L. c. 244, § 14, and their published claims to be the present holders of the mortgages were false. Nor may a postforeclosure assignment be treated as a preforeclosure assignment simply by declaring an

---

[21]Title Standard No. 58 (3) issued by the Real Estate Bar Association for Massachusetts continues: "However, if the Assignment is not dated prior, or stated to be effective prior, to the commencement of a foreclosure, then a foreclosure sale after April 19, 2007 may be subject to challenge in the Bankruptcy Court," citing *In re Schwartz*, 366 B.R. 265 (Bankr. D. Mass. 2007).

"effective date" that precedes the notice of sale and foreclosure, as did Option One's assignment of the LaRace mortgage to Wells Fargo. Because an assignment of a mortgage is a transfer of legal title, it becomes effective with respect to the power of sale only on the transfer; it cannot become effective before the transfer. See *In re Schwartz, supra* at 269.

However, we do not disagree with Title Standard No. 58 (3) that, where an assignment is confirmatory of an earlier, valid assignment made prior to the publication of notice and execution of the sale, that confirmatory assignment may be executed and recorded after the foreclosure, and doing so will not make the title defective. A valid assignment of a mortgage gives the holder of that mortgage the statutory power to sell after a default regardless whether the assignment has been recorded. See G. L. c. 183, § 21; *MacFarlane* v. *Thompson*, 241 Mass. 486, 489 (1922). Where the earlier assignment is not in recordable form or bears some defect, a written assignment executed after foreclosure that confirms the earlier assignment may be properly recorded. See *Bon* v. *Graves*, 216 Mass. 440, 444-445 (1914). A confirmatory assignment, however, cannot confirm an assignment that was not validly made earlier or backdate an assignment being made for the first time. See *Scaplen* v. *Blanchard*, 187 Mass. 73, 76 (1904) (confirmatory deed "creates no title" but "takes the place of the original deed, and is evidence of the making of the former conveyance as of the time when it was made"). Where there is no prior valid assignment, a subsequent assignment by the mortgage holder to the note holder is not a confirmatory assignment because there is no earlier written assignment to confirm. In this case, based on the record before the judge, the plaintiffs failed to prove that they obtained valid written assignments of the Ibanez and LaRace mortgages before their foreclosures, so the postforeclosure assignments were not confirmatory of earlier valid assignments.

Finally, we reject the plaintiffs' request that our ruling be prospective in its application. A prospective ruling is only appropriate, in limited circumstances, when we make a significant change in the common law. See *Papadopoulos* v. *Target Corp.*, 457 Mass. 368, 384 (2010) (noting "normal rule of retroactivity"); *Payton* v. *Abbott Labs*, 386 Mass. 540, 565 (1982). We have not

done so here. The legal principles and requirements we set forth are well established in our case law and our statutes. All that has changed is the plaintiffs' apparent failure to abide by those principles and requirements in the rush to sell mortgage-backed securities.

*Conclusion.* For the reasons stated, we agree with the judge that the plaintiffs did not demonstrate that they were the holders of the Ibanez and LaRace mortgages at the time that they foreclosed these properties, and therefore failed to demonstrate that they acquired fee simple title to these properties by purchasing them at the foreclosure sale.

*Judgments affirmed.*

CORDY, J. (concurring, with whom Botsford, J., joins). I concur fully in the opinion of the court, and write separately only to underscore that what is surprising about these cases is not the statement of principles articulated by the court regarding title law and the law of foreclosure in Massachusetts, but rather the utter carelessness with which the plaintiff banks documented the titles to their assets. There is no dispute that the mortgagors of the properties in question had defaulted on their obligations, and that the mortgaged properties were subject to foreclosure. Before commencing such an action, however, the holder of an assigned mortgage needs to take care to ensure that his legal paperwork is in order. Although there was no apparent actual unfairness here to the mortgagors, that is not the point. Foreclosure is a powerful act with significant consequences, and Massachusetts law has always required that it proceed strictly in accord with the statutes that govern it. As the opinion of the court notes, such strict compliance is necessary because Massachusetts both is a title theory State and allows for extrajudicial foreclosure.

The type of sophisticated transactions leading up to the accumulation of the notes and mortgages in question in these cases and their securitization, and, ultimately the sale of mortgage-backed securities, are not barred nor even burdened by the requirements of Massachusetts law. The plaintiff banks, who brought

these cases to clear the titles that they acquired at their own foreclosure sales, have simply failed to prove that the underlying assignments of the mortgages that they allege (and would have) entitled them to foreclose ever existed in any legally cognizable form before they exercised the power of sale that accompanies those assignments. The court's opinion clearly states that such assignments do not need to be in recordable form or recorded before the foreclosure, but they do have to have been effectuated.

What is more complicated, and not addressed in this opinion, because the issue was not before us, is the effect of the conduct of banks such as the plaintiffs here, on a bona fide third-party purchaser who may have relied on the foreclosure title of the bank and the confirmative assignment and affidavit of foreclosure recorded by the bank subsequent to that foreclosure but prior to the purchase by the third party, especially where the party whose property was foreclosed was in fact in violation of the mortgage covenants, had notice of the foreclosure, and took no action to contest it.